IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALBERT POON,

    Petitioner,                             No. Civ. S-05-0801 JAM EFB P

    vs.

TOM L. CAREY, et al.,

    Respondents.                         FINDINGS AND RECOMMENDATIONS

_____/

       Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a May 7, 2003 disciplinary conviction he received while in the custody of the California Department of Corrections at California State Prison-Solano ("CSP-Solano"). He seeks federal habeas corpus relief on the grounds that his Fourteenth Amendment due process rights were allegedly violated because: (1) he was not present at the disciplinary hearing at issue and did not waive the right to be present in writing, and (2) his conviction was obtained through the unconstitutional failure of the prison authority to disclose evidence favorable to him. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

////

1

BACKGROUND

On April 7, 2003, petitioner received a CSP-Solano Rules Violation Report ("RVR") indicating he was charged with violating California Code of Regulations, title 15, section 3006(a), for possession of inmate manufactured weapons, after Correctional Officer P. Baker found two inmate manufactured weapons in the cell petitioner and his cellmate occupied. Ans., Ex. C. A disciplinary hearing on petitioner's RVR was held on May 7, 2003. *Id.* At the beginning of the hearing, petitioner told the hearing officer that he did not want to be there and he walked out of the hearing. Pet., Attach. 8; Pet. at 5. According to the RVR, petitioner "did not make any objections to proceed with the hearing. [He] made objections to proceed with [the] hearing after it began stating, 'I'm leaving. I don't want to be here.' [Petitioner] elected to have this RVR adjudicated in absentia." Pet., Attach. 8. Petitioner contends that he left the hearing after discovering that the hearing officer did not have a copy of an investigative report he believed to be crucial to his case, and that he did not waive his right to be present at the hearing.[1] Pet. at 5. According to the hearing officer, however, petitioner wanted to leave the disciplinary hearing after admitting to ownership of the weapons and after being questioned about that by the hearing officer. Traverse, Ex. F.

After petitioner left the hearing, the hearing officer entered a not guilty plea on petitioner's behalf. Pet., Attach. 8. Thereafter, the following evidence was presented: the RVR and supplemental report, petitioner's mental assessment, an investigative employee's report, a crime incident report, a medical incident report, testimony from Officer Baker regarding the

---

[1] Petitioner believes that one of the weapons he was charged with possessing was planted in his cell by someone who wanted his job in the law library at CSP-Solano, and that the other weapon belonged to his cellmate, who pled guilty to possession of that weapon. Traverse at 1-2. Petitioner's belief is based, at least in part, on an alleged statement he received from Sergeant E. Da Rosa that his cell was searched as a result of information the Sergeant received from a confidential informant. *Id.* Petitioner also alleges that Officer Robinson shared petitioner's belief and informed petitioner that she would prepare a report detailing that belief. *Id.* at 2. Petitioner contends he left the disciplinary hearing because the hearing officer did not have a copy of such a report. *Id.*

weapons he found in petitioner's cell, and testimony from Sergeant E. Da Rosa (who spoke to petitioner after the weapons were found) regarding petitioner's statements that the instruments that were found in his cell were not weapons and that he "uses them to cook vegetables." *Id*. Sergeant Da Rosa also testified that he did not receive any confidential information from any inmates that there were weapons in petitioner's cell. *Id*. Petitioner did not offer any evidence to substantiate his innocence. Ans., Ex. C. Petitioner was then found guilty of the charge against him and was assessed a loss of 360 days of worktime credit, 10 months of segregated housing, and the addition of 24 unfavorable points (which led to his transfer to CSP-Sacramento, a higher-security prison, on March 2, 2005).[2] Pet. at 2, 8, Attach. 6, 8; Ans., Ex. C.

Petitioner unsuccessfully challenged the finding of guilt via CSP-Solano's administrative appeal process. His appeal at the director's level (the final level of appeal) was denied on November 7, 2003 for the following reasons:

> The reviewer found that the appellant was appropriately found guilty of the RVR charge. The reviewer considered the appellant's explanation; however, determined it does not justify his request. The reviewer affirms that the appellant walked out of the hearing stating, "I'm leaving, I don't want to be here." The reviewer notes that the [Senior Hearing Officer ("SHO")] documents that the appellant elected to have the RVR conducted in absentia. Despite his claim that the RVR hearing was conducted by a different SHO, the reviewer relates that the appellant has not produced any evidence that supports this allegation. Moreover, the reviewer relates that there is no evidence that any confidential information, related to this incident, exists. Finally, the reviewer relates that there is no evidence that any other attempted to set up the appellant by placing the weapon in his cell. The reviewer points out that the appellant admitted that he used one of the weapons to cut vegetables. The reviewer notes that the SHO afforded the appellant all procedural due process and that after reviewing all available information found the appellant guilty of the charge.
>
> ***

---

[2] In November 2003, Petitioner and his cellmate were also criminally prosecuted for possession of the inmate manufactured weapons. Pet. at 8, Attach. 5. Petitioner's case resulted in a mistrial and was ultimately not re-prosecuted. Ans. at 4.

3

> The documentation and arguments presented are persuasive that the appellant has failed to support his contention that he was inappropriately found guilty or that a second SHO conducted the RVR hearing after he decided to leave the hearing. Moreover, the reviewer has demonstrated that there was no confidential information related to this incident or utilized by the SHO in rendering a decision. The appeals examiner finds the guilty finding to be appropriate.

Pet., Attach. 1.

On July 2, 2003, petitioner filed a petition for writ of habeas corpus in California's First District Court of Appeal. Pet., Attach. 1. The petition was summarily denied on July 9, 2003. *Id.* Thereafter, on December 8, 2003, petitioner filed a petition in this court. Ans., Ex. L. That petition was dismissed on March 31, 2004, because petitioner had failed to exhaust his state court remedies. Pet., Attach. 4; Ans., Ex. M. On April 6, 2004, petitioner filed a petition for a writ of habeas corpus from the California Supreme Court. That court summarily denied his petition on March 16, 2005. Pet. at 9, Attach. 1, 7. On April 22, 2005, petitioner filed a second petition for writ of habeas corpus before this court.

## ANALYSIS

I. <u>Standards for a Writ of Habeas Corpus</u>

Pursuant to 28 U.S.C. § 2254, a person in custody under a state court judgment may apply for a writ of habeas corpus "on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Because petitioner filed his application for a writ after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

*Id.* § 2254(d) (referenced herein as § 2254(d) or AEDPA); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

In determining whether the state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the last reasoned state court decision addressing the merits of the petitioner's claim. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether "the state court decision was objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law."). Because there are no reasoned state court opinions addressing the merits of petitioner's claims, this court will independently review the record to determine whether the state court clearly erred in its application of Supreme Court law.

II. Petitioner's Claims

Petitioner claims that his conviction for possession of inmate manufactured weapons violated his due process rights under the Fourteenth Amendment fro two reasons: first, that he was not present at his disciplinary hearing and did not waive the right to be present in writing, as required by California Code of Regulations, title 15, section 3320(g)(3); and second, that his conviction was obtained by the unconstitutional failure of the prison authority to disclose evidence favorable to petitioner. The latter claim is predicated on the contention that prison authorities had only recently admitted that information from an informant prompted Officer Baker to search petitioner's cell. Pet. at 5.

////

Prison inmates subjected to disciplinary action resulting in a loss of a liberty interest are entitled to minimum procedural protections under the due process clause. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Protected liberty interests may arise either from the due process clause itself, or from state law. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). A liberty interest may arise under state law when an inmate is subjected to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents or prison life" or if the discipline imposed will inevitably affect the duration of the inmate's sentence.[3] *Id*. at 484, 487. Here, respondent does not dispute, and it is therefore assumed, that petitioner possessed a liberty interest that entitled him to due process at his prison disciplinary hearing.[4] Ans. at 6; *see also Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987). Therefore, the issue to be addressed is whether petitioner was deprived of his liberty interest without due process.

Prison disciplinary proceedings are not part of a criminal prosecution and a prisoner is not afforded the full panoply of rights in such proceedings. *Wolff*, 418 U.S. at 556. However, due process requires the fundamental safeguards of notice and a meaningful opportunity to be heard. Thus, at a prison disciplinary hearing due process requires written notice of the charges at least twenty-four hours before the disciplinary hearing, as well as a statement of the evidence relied on by the prison officials and the reasons for the disciplinary action taken. *Wolff*, 418 U.S. at 563-66. Prisoners also have the limited right to call and present witnesses in their defense if

---

[3] For example, when a state law creates the right to time credits and recognizes that deprivation of those credits is a sanction authorized only for serious misconduct, a prisoner's interest in those credits "has real substance" and therefore creates a liberty interest that entitles the prisoner to due process protection. *Wolff*, 418 U.S. at 557-58; *see also* Cal. Penal Code § 2932(a) (providing that credits may be forfeited if a prisoner is found guilty of a serious act of misconduct).

[4] Respondent does not indicate whether petitioner had a liberty interest in his worktime credit, in not being subject to disciplinary segregation, and/or in not receiving additional unfavorable points; rather, respondent simply does not dispute that petitioner was entitled to due process at his disciplinary hearing. And, although petitioner appears to be primarily concerned with the addition of unfavorable points (which ultimately led to his transfer to CSP-Sacramento), he seeks to "invalidate the finding of guilty and any/all punishments imposed whereupon." Pet. at 7.

such action will not be "unduly hazardous to institutional safety or correctional goals." *Id.* at 566; *see also Ponte v. Real*, 471 U.S. 491, 495 (1985).

In addition, a prison hearing officer's determination must be supported by "some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). This standard is satisfied if "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. The finding of guilt cannot be "without support" or "arbitrary." *Id.* at 457. There must be "some indicia of reliability of the information that forms the basis for prison disciplinary actions." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). In examining the record, a court is not to make its own assessment of the credibility of witnesses or re-weigh the evidence. *Hill*, 472 U.S. at 455. "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [hearing officer]." *Id*. at 455-56.

### A. Petitioner's Absence from Disciplinary Hearing

Petitioner first claim is that he was denied due process because he not present at his disciplinary hearing. This claim is predicated on California Code of Regulations, title 15, section 3320(g)(3),[5] which generally provides that the inmate be present unless he has waived

---

[5] California Code of Regulations, title 15, section 3320(g) provides:

(g) The inmate shall normally be present at a disciplinary hearing. When a disciplinary hearing is held without the inmate present, the reason for the absence shall be documented during the hearing on the CDC Form 115. The inmate shall be present at a disciplinary hearing unless:

    (1) A psychiatrist has determined that the inmate suffers from a serious mental disorder preventing the inmate's understanding of or participation in the hearing, and there is a compelling reason or need to proceed with the hearing.
    (2) The inmate was convicted of escape in court and has not been returned to the facility or jurisdiction from which the escape occurred.
    (3) The inmate has waived the right to be present in writing, or in the case of a refusal to sign a waiver, the refusal was witnessed by a custody officer, documented on a CDC Form 128-B (Rev. 4/74),

7

that right in writing. Pet. at 5. Petitioner acknowledges that he was present at his disciplinary hearing and elected to leave, *id.*, but argues that he was denied due process because he did not expressly waive the right to be present. Traverse at 8.

Although *Wolff* does not directly state that a prisoner has a due process right to be present at his disciplinary hearing, several courts have determined that prisoners are entitled to that right. *Alexander v. U.S. Parole Comm'n*, 721 F.2d 1223, 1227 (9th Cir. 1983); *Battle v. Barton*, 970 F.2d 779, 782 (11th Cir. 1992) ("an inmate's right to attend a prison disciplinary hearing is one of the essential due process protections afforded by the Fourteenth Amendment and recognized in *Wolff*"); *Johnson v. Doling*, 2007 WL 3046701, at * 9 (N.D.N.Y. Oct. 17, 2007) ("We find implicit in the Supreme Court's decision in *Wolff* the limited right to be physically present at disciplinary hearings in order to exercise the aforementioned basic due process rights."); *but see Francis v. Coughlin*, 891 F.2d 43, 48 (2d Cir. 1989) (holding that an inmate's right to be present at his disciplinary hearing could not be implied from any of *Wolff's* due process requirements). However, "the rights accorded inmates at disciplinary hearings are not absolute," *Battle*, 970 F.2d at 782, and a prisoner can waive the right to be present at his disciplinary proceeding. *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185 (1972). As stated by the Fifth Circuit:

> If, through no fault of prison officials, a prisoner is unable or refuses to attend a disciplinary hearing, due process requires no more than that the hearing be held in accordance with all of the other requirements of due process that are called for under the circumstances. Due process requires only that the government operate under procedures that give a person a fair opportunity to ensure that the governmental decision affecting that person's life, liberty, or property is just; it does not mean that the government, in an effort to make sure that everyone does what is in his or her best interests, must see to it that each person takes advantage of these opportunities.

*Moody v. Miller,* 864 F.2d 1178, 1181 (5th Cir. 1989).

---

and attached to the CDC Form 115 for review by the Senior Hearing Officer at the disciplinary hearing and by the Chief Disciplinary Officer following adjudication of the rules violation report.

8

Even a defendant in a criminal trial can voluntarily waive his right to be present by failing to appear. *Campbell v. Blodgett*, 978 F.2d 1502, 1510 (9th Cir. 1992) (citing *Taylor v. United States*, 414 U.S. 17 (1973)). In *Taylor*, the Court held that a defendant who did not return to the courthouse after the first morning of trial waived his right to be present at trial. The Court held that the defendant "need not have been expressly warned of his right to be present and that it was not necessary to have an express waiver on the record. The defendant's failure to attend and assert his right was construed as a voluntary waiver." *Campbell,* 978 F.2d at 1510 (citing *Taylor*, 414 U.S. at 19-20). Here, the record demonstrates that prison officials adhered to a procedure that afforded petitioner a fair opportunity to contest the charges. He admittedly was given notice of the hearing, appeared at the hearing, and allowed it to commence. He simply walked out when it did not proceed to his liking. Based on that choice, there is more than adequate evidence to support the finding that petitioner knowingly and voluntarily waived his right to be present at his disciplinary hearing when he walked out, stating "I'm leaving. I don't want to be here." Demonstrably, the prison officials provided petitioner with a "fair opportunity" to appear at the hearing and present a defense, but petitioner decided not to take advantage of that opportunity. *See Moody,* 864 F.2d at 1181.

Even if petitioner's conduct when he walked out of the hearing had not manifested a clear intent to knowingly waive his right to be present at his disciplinary hearing, the hearing officer's decision to proceed with that hearing after petitioner left was, at worst, harmless error. *Marino v. Humphrey*, 2006 WL 2786182, at *5 (S.D.N.Y. Sept. 27, 2006) ("Harmless error analysis applies to prison disciplinary hearings and requires factual assessment of the prejudice, if any, to the prisoner resulting from the error. Courts may find harmless error where a prisoner fails to show that the error negatively affected the outcome of the proceeding, or that it impaired the prisoner's ability to prepare a defense."). In petitioner's case, a not guilty plea was entered on his behalf, and even with petitioner absent from the hearing, the hearing officer questioned two of petitioner's requested witnesses to establish the elements of the offense against petitioner.

1 Pet., Attach. 8. Because the hearing officer determined that petitioner admitted to ownership of
2 at least one of the weapons at issue, petitioner's presence at the hearing likely would not have
3 affected the outcome of the hearing and his absence was harmless.

4 Petitioner further argues that he was denied due process because he did not waive the
5 right to be present *in writing*, a requirement of California law. This claim necessitates focus on
6 what rights attendant to the right of presence at the hearing are required by the Fourteenth
7 Amendment and what related procedural rights are afforded by state law. Federal habeas corpus
8 relief "does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Estelle v.
9 McGuire*, 502 U.S. 62, 67 (1991); *see also Dugger v. Adams*, 489 U.S. 401, 409 (1989) ("[T]he
10 availability of a claim under state law does not of itself establish that a claim was available under
11 the United States Constitution."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may
12 not issue the writ [of habeas corpus] on the basis of a perceived error of state law."). Here, the
13 due process clause of the Fourteenth Amendment provides a right of presence at the hearing. It
14 does not require that petitioner's waiver of that right by walking out and refusing to participate
15 be confirmed with a written statement by petitioner. Therefore, even if petitioner's did not
16 confirm his choice not to remain in the hearing with a written waiver, and assuming further that
17 this constituted a violation of California law, it did not violate the federal constitution. "[T]he
18 Due Process Clause only requires that prisoners be afforded those procedures mandated by *Wolff*
19 and its progeny"; it does not require the state to comply with its own, more generous procedures.
20 *Knight v. Evans*, 2008 WL 4104279, at *9 (N.D. Cal. Sept. 4, 2008) (citing *Walker v. Sumner*, 14
21 F.3d 1415, 1419-20 (9th Cir. 1994), abrogated on other grounds by *Sandin*, 515 U.S. 472).
22 /////
23 /////
24 /////
25 /////
26 /////

Here, petitioner had the opportunity to be present at his hearing – and *was* present at the beginning of the hearing – but, voluntarily waived that right when he elected to walk out of the hearing.[6] Petitioner also received written notice of the charges against him more than 24 hours before his hearing (he was given a copy of the RVR weeks before the hearing), was given a statement of the evidence relied on by the prison officials and the reasons for the disciplinary action taken, and had an opportunity to call and present witnesses in his defense (*see infra* Part II.C). *Id.*; Ans. at 7, Ex. C. Therefore, the due process requirements set forth in *Wolff* were satisfied. Accordingly, petitioner is not entitled to habeas relief on this ground.

B.  Failure to Disclose Evidence

Petitioner also argues that his disciplinary conviction violates due process because the prison authorities failed to disclose evidence favorable to him. Pet. at 5. He claims that he was told that no informant encouraged the search of his cell, but later learned that his cell was searched as a result of information obtained from an informant. Petitioner argues that: "Sgt. Da Rosa told me he ordered our cell searched on a tip from an informant. Throughout the Administrative Remedy process, they flatly denied there's an informant, until the [Assistant District Attorney] prosecuting me for the same incident under [California Penal Code section] 4502 finally confessed to my attorney that Sgt. Da Rosa had admitted to him on October 27, 2003 that indeed an informant prodded him to order the search of our cell." Pet. at 5. Petitioner contends this is relevant because he believes that someone planted at least one of the weapons in his cell and that person also encouraged the prison officials to search his cell.

/////

---

[6] Although petitioner contends that he left the hearing because the hearing officer did not have a copy of Officer Robinson's report, *supra* n.1, the question of whether due process was satisfied does not turn on his motivation for choosing to leave. Moreover, there is no indication in the record that Officer Robinson ever prepared the report petitioner references or indicated to petitioner that she would prepare such a report. Ans. at 7, Ex. C. In fact, in response to one of petitioner's administrative appeals, an associate warden at CSP-Solano informed petitioner that Officer Robinson "could not confirm" petitioner's allegation of being set up. Traverse, Ex. F.

Petitioner bases his argument on an initial statement from Sergeant Da Rosa to him, as well as an alleged statement from Sergeant Da Rosa to petitioner's attorney in October 2003, regarding the use of an inmate informant. However, neither alleged statement is substantiated by the record. Rather, both alleged statements are contradicted by Sergeant Da Rosa's testimony at petitioner's disciplinary hearing that no inmate informant was used, and the second alleged statement relies on hearsay evidence. Moreover, on July 1, 2003, in response to an administrative appeal by petitioner, an associate warden at CSP-Solano informed petitioner that Sergeant DaRosa was not aware of an inmate informant, consistent with his testimony at petitioner's disciplinary hearing, but did receive information from another staff member about potential contraband in petitioner's cell. Traverse, Ex. F.

Nonetheless, even if an inmate informant did tip off one of the correctional officers and cause Officer Baker to search petitioner's cell, and even if that information was not provided to petitioner, petitioner's due process rights were not violated.[7] Petitioner has acknowledged ownership of at least one of the inmate manufactured weapons at issue. Evidence that an informant tipped off the prison officials and caused them to search his cell would not be exculpatory. Pet., Attach. 8; Traverse at 1-2 ("After Petitioner signed the blank Miranda form, Sgt. Da Rosa coerced Petitioner and tried to persuade Petitioner to admit that he use[d] it to cut vegetables so it is not a weapon and he would help Petitioner to get out of ad/seg (administrative segregation) in three days. Petitioner pretended that he would go along . . . ."); *see also* Ans., Ex. G and Pet., Attach. 1 (In at least two of petitioner's administrative appeals, he said that he used the weapon to cut vegetables, but said that he was referring to a safety razor that was located near the sink, not to the weapon at issue); *but see* Traverse at 8 ("Contrary to Sgt. Da Rosa's claim that Petitioner admitted ownership by stating 'I use that to cut vegetables,' Petitioner explicitly expressed 'I understand my rights and choose to remain silent.' Petitioner

---

[7] Due process does not require that an informant's identity be revealed to an inmate. *Wolff*, 418 U.S. at 568-69; *Mendoza v. Miller*, 779 F.2d 1287, 1294 (7th Cir. 1985).

could not have given Sgt. Da Rosa [the statement that petitioner used the weapon to cut vegetables].").

Further, petitioner's contentions that the prison officials lied to him about the use of an informant do not support a finding that his due process rights were violated. Even assuming petitioner's allegations are true, a procedural due process claim arising out the filing of a false disciplinary report fails, so long as the *Wolff* protections were afforded to the inmate at a disciplinary hearing. *See Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986) (an inmate's procedural due process rights are not violated by false charges if inmate is granted a hearing on the charges and an opportunity to rebut them), *cert. denied*, 485 U.S. 982 (1988); *Smith v. Davis*, 2007 WL 4463074, at *3 (N.D. Cal. Dec. 17, 2007). As stated above, in this case, the due process requirements set forth in *Wolff* were met.

Insomuch as petitioner contends the prison officials' failure to disclose evidence regarding the use of an informant constitutes a violation of due process under *Brady v. Maryland*, the argument fails because the "evidence" about which petitioner complains was not material to his guilt or to his punishment. 373 U.S. 83, 87 (1963); *see also Bailey v. Rae*, 339 F.3d 1107, 1113 (9th Cir. 2003).[8] There are three components of a *Brady* violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see also Bailey*, 339 F.3d at 1113. As discussed above, "evidence" regarding the prison

---

[8] At least one circuit court has held that the *Brady* rule requiring the disclosure of material, exculpatory evidence, applies to prison disciplinary proceedings. *See Piggie v. Cotton*, 344 F.3d 674, 678-79 (7th Cir. 2003) ("*Piggie II*"); *Chavis v. Rowe*, 643 F.2d 1281, 1285-86 (7th Cir. 1981). According to the Seventh Circuit, the function of *Brady* in the prison disciplinary context is two-fold: first, to ensure that the disciplinary board considers all relevant evidence and, second, to enable the prisoner to present his best defense. *Piggie II*, 344 F.3d at 678-79. "Accordingly, an inmate is entitled to disclosure of material, exculpatory evidence in prison disciplinary hearings unless such disclosure would unduly threaten institutional concerns." *Id.* (citations omitted).

13

officials' alleged use of an inmate informant would not have been exculpatory.  Neither would it have been impeaching.  There is no indication Sergeant Da Rosa ever admitted to use of an *inmate* informant.  Finally, the prison officials' failure to provide such evidence (assuming it existed) was not prejudicial to petitioner.  Therefore, petitioner is not entitled to habeas relief on this ground.

        C.  <u>Inability to Call Witnesses</u>

Respondent contends that "Petitioner complains his due process rights were violated as [some of the witnesses he sought to present] did not appear at the hearing."  Ans. at 7.  According to the RVR, petitioner chose to have Sergeant E. Da Rosa, Officers P. Baker, M. Wiegel, D. Henry, and P. Williams present as witnesses at the hearing, along with his supervisor Mr. Richard Sanders, who would testify as a character witness; however, only Sergeant Da Rosa and Officer Baker were present at the hearing because the hearing officer determined that the other "witnesses had no relevant or additional information."  Pet., Attach. 8.

Petitioner does not raise this argument in his petition.  Nonetheless, even if it were raised, the argument would fail.  As threshold barrier to it, petitioner elected not to be present at his disciplinary hearing, and therefore waived his right to question his witnesses.  *Barboza v. Kelsey*, 2008 WL 2512785, at *9 (C.D. Cal. June 23, 2008) ("An inmate may waive his right to request witness testimony at a disciplinary hearing.  Such a waiver need not be in writing to satisfy constitutional due process standards, and the waiver may be implicit rather than explicit.") (citing *Bedoya v. Coughlin*, 91 F.3d 349, 352 (2d Cir. 1996) (stating that "an inmate's silence can constitute a waiver of his due process right to request witness testimony at a disciplinary hearing," and holding that the inmate waived his right to call a witness "by failing either to reiterate his request for [the witness's] testimony when given the opportunity or to object to the close of the hearing")).

Further, two of petitioner's requested witnesses appeared at the hearing and were actually questioned by the hearing officer.  The fact that petitioner was unable to call the other witnesses

does not raise a due process concern because the hearing officer specifically determined that their testimony was either cumulative or irrelevant.  The right to call witnesses is subject to the "mutual accommodation between institutional needs and objectives and the provisions of the Constitution." *Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976) (citing *Wolff*, 418 U.S. at 556); *see also Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003); *Bostic v. Carlson*, 884 F.2d 1267, 1271 (9th Cir. 1989). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Wolff*, 418 U.S. at 566.  So long as the prison official's reasons for excluding a witness "are logically related to preventing undue hazards to 'institutional safety or correctional goals,' the explanation [provided by that officer] should meet the due process requirements as outlined in *Wolff*." *Ponte*, 471 U.S. at 497.  "[A] prison disciplinary body may refuse a request to present evidence for 'irrelevance, lack of necessity, or the hazards presented in individual cases.'" *Baxter*, 425 U.S. at 321; *see also* Cal. Code Regs. tit. 15, § 3315(e)(1)(B) ("Requested witnesses shall be called unless the official conducting the hearing denies the request [because, inter alia, the] official determines that the witness has no relevant or additional information.").  Because the testimony of Officers Wiegel, Henry, and Williams  would have been cumulative of the testimony that Officers Baker and Da Rosa provided at the hearing, and the testimony of petitioner's requested character witness would have been irrelevant since petitioner's character was not at issue in the hearing, the hearing officer's decision to exclude those witnesses did not constitute a due process violation.  Accordingly, petitioner is not entitled to habeas relief on this ground.

      D.  <u>Some Evidence</u>

Further, petitioner's conviction for possession of inmate manufactured weapons does not violate due process because it is supported by "some evidence" in the record.  In addition to the RVR and other various documents evidencing that weapons were found in petitioner's cell, at

1  the disciplinary hearing, Officer Baker testified that he found two weapons in petitioner's cell.
2  Pet., Attach. 8.  Further, Sergeant Da Rosa testified that petitioner admitted to ownership of the
3  weapons and stated that he used the weapons "to cook vegetables."[9]  *Id.*  There is no credible
4  information before the court that would cast doubt on the reliability of this evidence.  Although
5  petitioner contends that the testimony of the two officers is not credible, it is not the province of
6  this court to re-weigh the evidence or assess the credibility of witnesses.  Accordingly, the court
7  finds that there is "some evidence" in the record that could support the conclusion reached by the
8  hearing officer that petitioner was guilty of possession of inmate manufactured weapons.
9  Therefore, petitioner's due process rights were not violated and his petition must be denied.

III.  Recommendations

For all of the foregoing reasons, it is hereby RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  December 19, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[9] As noted above, Petitioner also admitted to ownership of the weapons in his traverse and in at least two of his administrative appeals. Pet., Att. 1; Ans., Ex. G (stating that petitioner claimed that one of the alleged weapons is just a razor blade, which he used to cut vegetables).

16